IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANNY TROXELL,

    Petitioner,

  v.

ROBERT HOREL, Warden

    Respondent.

_____/

No. C-07-1583 TEH (PR)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

Pro se Petitioner Danny Troxell, a state prisoner incarcerated at Pelican Bay State Prison in Crescent City, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("BPH") January 10, 2006 decision to deny him parole, which, for the reasons that follow, the Court denies.

I

Below is a factual summary of the commitment offense as set forth at Petitioner's second parole suitability hearing that BPH adopted, without objection, at Petitioner's third parole suitability

hearing on January 10, 2006. Doc. #18-17 at 9-10; Doc. #18-2 at 51-53.

At approximately 5:30 p.m. on January 26, 1979, Margaret Greenwood, an employee of the Greenwood Market, saw Petitioner squatted down near the cash register holding a sawed-off shotgun. Petitioner stood up and demanded money from the register monitored by Greenwood, and she complied. Petitioner then demanded money from a second cash register monitored by another employee, Mr. Sulum. When Sulum had difficulty opening the register, Greenwood came to his aid. Petitioner threatened to shoot Sulum. As Greenwood opened Sulum's register she announced that Petitioner had a gun. A third person, Mr. Bitar, approached Petitioner and grabbed the shotgun. Petitioner pulled back and fired the shotgun, striking Bitar in the chest. Petitioner fled the scene. Bitar subsequently died from the gunshot wound. Doc. #18-2 at 44 & 51–53.

On July 16, 1979, Petitioner was sentenced to twenty-six-years-to-life in state prison following his guilty pleas in Fresno County Superior Court to first degree murder and robbery and his admission to serving a prior prison term for burglary. Doc. #18-16 at 16-17, 20 & 26. His minimum eligible parole date was August 12, 1996. Doc. #18-17 at 4.

Since 1985, Petitioner has been housed in a Security Housing Unit ("SHU") because he has been validated by the California Department of Corrections and Rehabilitation ("CDCR") as an "active"

member of the Aryan Brotherhood ("AB") prison gang.[1]  Doc. #18-17 at 22 & 34; Doc. #18-18 at 2-3.

On January 10, 2006, Petitioner appeared before BPH for his third parole suitability hearing.  Doc. #18-17 at 21.  At that hearing, BPH found Petitioner was "not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Doc. #18-18 at 5.  BPH cited several reasons to support its decision, including the commitment offense, Petitioner's criminal history, substance abuse history and institutional disciplinary history.  Id.  BPH also thoroughly discussed CDCR's continued validation of Petitioner as an active member of the AB.  Doc. #18-17 at 34 & 40-42; Doc. #18-18 at 2-3.

Petitioner unsuccessfully challenged BPH's decision in the state superior and appellate courts.  Doc. #18-19 at 23 & 25-27; Doc. #18-20 at 2.  This federal Amended Petition for a Writ of Habeas Corpus followed.  Doc. #8.

Per order filed on April 27, 2009, the Court found Petitioner's claim that BPH violated his due process rights, when liberally construed, was colorable under § 2254, and ordered Respondent to show cause why a writ of habeas corpus should not be granted.  Doc. #14.  Respondent has filed an Answer and Petitioner

---

[1] During his 2006 parole suitability hearing, Petitioner denied being a member of the AB, and has challenged CDCR's determination of membership through the prison administrative grievance system and in state and federal court. Doc. #18-17 at 40; Doc. #18-18 at 2-3; Doc. #18-3 at 82-85 & Doc. #18-4 at 2-19 (copies of Petitioner's prison administrative grievances, logged as PBSP 05-01550, and PBSP's responses thereto).

has filed a Traverse, which includes well over 2,500 pages of exhibits.  Doc. ## 18 & 21-44.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."  White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be

1 unreasonable." <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000).

2 While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) rests in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. <u>Williams</u>, 529 U.S. at 412; <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).

### III

#### A

The Fifth and Fourteenth Amendments prohibit the government from depriving a prisoner of life, liberty or property without due process of law. U.S. Const. Amends. V & XIV. It is now settled that California's parole scheme, codified in California Penal Code section 3041, vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." <u>Irons v. Carey</u>, 505 F.3d 846, 850 (9th Cir. 2007) (citing <u>Sass v. Calif. Bd. of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003); <u>McQuillon v. Duncan</u>, 306 F.3d 895, 903 (9th Cir. 2002)). It matters not that a parole date has not been set for the prisoner because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the [prisoner]." <u>Biggs</u>,

1  334 F.3d at 915.  Due process accordingly requires that a parole
2  board premise its decision regarding a petitioner's parole
3  suitability on "some evidence in the record" such that the decision
4  is not arbitrary.  Sass, 461 F.3d at 1128-29 (quoting Superintendent
5  v. Hill, 472 U.S. 445, 457 (1985)).  The "some evidence" standard is
6  clearly established federal law in the parole context for purposes
7  of § 2254(d).  Id. at 1129.

8       The Supreme Court set forth the "some evidence" standard
9  in Hill, which concerned the revocation of "good time" credits
10 towards parole resulting from prisoner misconduct.  Hill, 472 U.S.
11 at 455.  The Court rested its holding upon the procedural due
12 process foundation it laid in Wolff v. McDonnell, 418 U.S. 539,
13 563-67 (1974).  As the Court noted, Wolff required, among other
14 things, that a prisoner receive "a written statement by the fact
15 finder of the evidence relied on and the reasons" for the
16 deprivation of his good time credits.  Hill, 472 U.S. at 454 (citing
17 Wolff, 418 U.S. at 565).  The Court then added to the foundation
18 laid in Wolff:  "[R]evocation of good time does not comport with
19 'the minimum requirements of procedural due process,' unless the
20 findings of the prison disciplinary board are supported by some
21 evidence in the record."  Hill, 472 U.S. at 455 (quoting Wolff, 418
22 U.S. at 558).

23      The "some evidence" standard does not permit the court to
24 "reweigh the evidence."  Powell v. Gomez, 33 F.3d 39, 42 (9th Cir.
25 1994).  Instead, the inquiry is "whether there is any evidence in
26 the record that could support the conclusion reached by the

disciplinary board." Hill, 472 U.S. at 455-56.  While this test is stringent, it must at minimum protect a prisoner's "strong interest in assuring that the loss of [parole] is not imposed arbitrarily." Id. at 454.

Due process also requires that the evidence underlying the parole board's decision have some indicium of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904.  Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987).  If BPH's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

B

When assessing whether a state parole board's suitability determination was supported by "some evidence" the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons, 505 F.3d at 850.  Under California law, prisoners like Petitioner who are serving indeterminate life sentences for noncapital murders, i.e., those murders not punishable by death or life without the possibility of parole, become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal. 4th 1061, 1077-78 (2005).  At that point, California's parole scheme provides that BPH "shall set a release date unless it

determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code § 3041(b). Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). In making this determination, BPH must consider various factors, including the prisoner's social history, past criminal history and base and other commitment offense, including behavior before, during and after the crime. See id. § 2402(b)-(d). The "core determination" regarding a prisoner's threat to public safety "involves an assessment of a[] [prisoner's] *current dangerousness*." See In re Lawrence, 44 Cal. 4th 1181, 1205 (2008) (emphasis in original) (citing In re Rosenkrantz, 29 Cal. 4th 616 (2002) and In re Dannenberg, 34 Cal. 4th 1061 (2005)).

IV

Petitioner seeks federal habeas corpus relief from BPH's January 10, 2006 decision finding him unsuitable for parole and denying him a subsequent parole suitability hearing for three years on the ground that the decision does not comport with due process. Petitioner's main claim is that BPH's finding that he was unsuitable for parole violated his due process rights because the decision was not supported by "some evidence." Doc. #8, Pet. at 6 & 11.

8

Petitioner also claims that by validating him as a member of the AB, CDCR has what amounts to a blanket policy of denying him parole, that BPH's decision finding him unsuitable for parole violated his plea agreement and that he was denied the effective assistance of counsel at his parole suitability hearing.  Id. at 6 & 8-17.

A

Petitioner claims BPH's finding that he was unsuitable for parole violated his due process rights because the decision was not supported by "some evidence."

As an initial matter, the Court notes that the record shows BPH afforded Petitioner and his counsel an opportunity to speak and present Petitioner's case at the hearing, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned decision in denying parole.  Doc #18-17 at 6-10; Doc. #18-18 at 5-12.

The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was "not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Doc. #18-18 at 5; see Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).  Specifically, BPH considered the commitment offense, Petitioner's criminal history beginning at age thirteen, his substance abuse history,

1  institutional disciplinary history and CDCR's continued validation
2  of Petitioner as an active member of the AB.  Doc. #18-18 at 5-12;
3  see also Doc. #18-17 at 12-13 (discussing Petitioner's criminal
4  history); id. at 13-14 (discussing Petitioner's addiction to drugs,
5  including heroin); id. at 33 (discussing Petitioner's institutional
6  disciplinary history, which included stabbing another prisoner); id.
7  at 34 & 40-42; Doc. #18-18 at 2-3 (discussing Petitioner's continued
8  validation as a member of the AB).  During the hearing, BPH also
9  referenced  Petitioner's most recent psychological evaluation, in
10 which the doctor noted:  "it would be prudent to observe
11 [Petitioner] on a mainline before any predictions about his
12 dangerousness to the general community would be attempted."  Id. at
13 38.
14       BPH also considered other factors tending to support
15 suitability for parole including Petitioner's recent and consistent
16 positive institutional behavior, which reflected no rules violation
17 reports since 1997, and his prison programming, which was done
18 "largely on his own" due to his SHU placement.  Doc. #18-18 at 6;
19 Doc. #18-17 at 22-33.
20       The state superior court affirmed the decision of BPH to
21 deny Petitioner parole, finding that the record contained "some
22 evidence" to support BPH's finding that Petitioner was unsuitable
23 for parole.  Doc. #18-19 at 25-27.  The state appellate courts
24 summarily denied Petitioner's request for habeas corpus relief.
25 Doc. #18-19 at 23 & Doc. #18-20 at 2.
26       The record shows that BPH had some reliable evidence to

**10**

support its finding of unsuitability, which included Petitioner's criminal history, substance abuse history, institutional disciplinary history and CDCR's continued validation of Petitioner as an active member of the AB.  Under California law, validated prison gang members also known as "associates" are "deemed to be a severe threat to the safety of others or the security of the institution" and as a result "will be placed in a SHU for an indeterminate term."  Cal. Code Regs. tit. 15, § 3341.5(c)(2)(A)(2).  A validated prison gang member or associate "shall be considered for release from a SHU . . . after the [prisoner] is verified as a gang dropout through a debriefing process" or once CDCR personnel have classified the prisoner as an "inactive" member or associate, which means no involvement in gang activity for a minimum of six years.  Id. § 3341.5(c)(4) & (5).  A prisoner's gang validation requires at least three independent sources documenting gang membership; those sources include:  self-admission of membership; gang tattoos and symbols; written material pertaining to the gang; photographs depicting gang connotations; observations of CDCR staff; information regarding membership from other agencies; information regarding membership from informants and/or visitors; and information contained in prisoner communications.  Id. § 3378(c)(3) & (8).

      Here, evidence in the record shows that on July 8, 2003 and again on December 30, 2004, CDCR validated Petitioner as an active member of the AB based upon seven independent sources.  Doc. #18-4 at 6 & 10.  Further, following an investigation conducted in response to Petitioner's prison administrative grievance challenging

**11**

1  his indeterminate retention in the SHU due to his gang validation,
2  on December 12, 2005, CDCR found that Petitioner had not provided
3  information that would warrant any change to his housing status.
4  Id. at 18.

5      Based on the evidence BPH considered, and when viewed in
6  conjunction with the nature of the commitment offense, this Court
7  cannot say BPH's finding that Petitioner was unsuitable for parole
8  was "without support or otherwise arbitrary."  See Hill, 472 U.S. at
9  457.  Rather, BPH reasonably concluded that Petitioner was not yet
10 suitable for parole.  See, e.g., Biggs, 334 F.3d at 916 (upholding
11 denial of parole based on gravity of offense and the petitioner's
12 conduct prior to imprisonment).  It is not up to this Court to
13 "reweigh the evidence."  Powell, 33 F.3d at 42.

14     For these reasons, the Court finds that the state courts'
15 rejection of Petitioner's due process claim that BPH's decision was
16 not supported by "some evidence" was not contrary to, nor did it
17 involve an unreasonable application of, clearly established federal
18 law, and it was not based on an unreasonable determination of the
19 facts.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.
20 Petitioner therefore is not entitled to relief on this claim.

B

23     Petitioner next claims that BPH has a blanket policy of
24 denying parole to all prisoners who are housed in a SHU and that
25 policy factored into BPH's decision to deny him parole at his
26 January 10, 2006 hearing.

**12**

Promulgation of an anti-parole or no-parole policy violates a prisoner's due process rights. Cf. In re Rosenkrantz, 29 Cal. 4th 616, 683 (2002) ("It is well established that a policy of rejecting parole solely on the basis of the type of offense, without individualized treatment and due consideration, deprives an inmate of due process of law"). Whether or not BPH has a blanket policy of denying parole to all SHU prisoners is irrelevant in Petitioner's case, however, because, as set forth above, the record shows BPH made a decision to deny him parole based on an individualized assessment of Petitioner's commitment offense, criminal history, substance abuse history and institutional disciplinary history. Accordingly, the state court's rejections of Petitioner's claim that BPH has a blanket policy of denying parole to all SHU prisoners was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409. Petitioner therefore is not entitled to relief on this claim.

C

Petitioner next claims BPH's decision to deny him parole breached the terms of his 1979 plea agreement. Specifically, Petitioner claims his "plea was with the understanding that [he] would] be sentenced to '26 years-to-life'; but, if [he] lost no 'good time' in prison, [he would] be eligible for a parole date after <u>17 years 8 months</u> . . . [such that] as long as [he] did not

13

screw up, and lose any time in prison for violating prison rules, [he would] be out before [he] turned (51) years old." Doc. #8, Pet. at 8 (emphasis in original).

This claim is time-barred. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). A habeas petition by a state prisoner challenging a decision of an administrative body, such as BPH, is covered by the statute and the limitation period starts to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); <u>Shelby v. Bartlett</u>, 391 F.3d 1061, 1066 (9th Cir. 2003); <u>see also</u> <u>Redd v. McGrath</u>, 343 F.3d 1077, 1081-82 (9th Cir. 2003).

Here, the factual predicate or basis of Petitioner's claim that his plea agreement was violated was known to him no later than August 12, 1996, his minimum eligible parole date.[2] Further, if there was any doubt in Petitioner's mind that prison officials were not living up to his parole expectations after his minimum eligible parole date came and went, it should have been removed when he was denied parole again in 2001. Petitioner's breach-of-plea-agreement claim accrued in August 1996; because he did not file his federal habeas Amended Petition within the one-year limitation period, the

---

[2] Petitioner was found not suitable for parole at his initial parole consideration hearing in 1995, as well as at his first subsequent parole suitability hearing in 2001. Although the 1995 decision might have been an anticipatory breach of his plea agreement, certainly the actual breach occurred no later than August 1996.

**14**

claim is time-barred.

Even if the claim were not barred by the statute of limitations, Petitioner's breach-of-plea-agreement claim has no merit. "Plea agreements are contractual in nature and are measured by contract law standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003) (quoting United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993)). Although a criminal defendant has a due process right to enforce the terms of a plea agreement, see Santobello v. New York, 404 U.S. 257, 261-62 (1971), there is no evidence that Petitioner's subjective expectations about how parole would be decided were part of the plea agreement. Petitioner has not pointed to any language in any plea agreement that shows any particular term of that agreement has been breached; rather, he argues merely that he never expected parole consideration to work the way it does. Indeed, Petitioner's sentencing documents clearly reflect an indeterminate sentence of twenty-six-years-to-life as well as his express acknowledgment that by pleading guilty "there [was] no promise or assurance at all [he] would ever be released from prison, [and] that [he understood] [he] could spend the rest of [his] life in prison." Doc. #18-16 at 15.

The state courts' rejection of Petitioner's breach-of-plea-agreement claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409. Petitioner therefore is not entitled to relief on this claim.

15

D

Petitioner next claims he was denied the effective assistance of counsel at his parole suitability hearing. The state superior court rejected Petitioner's claim, finding no evidence in the record of prejudicial misconduct by counsel. Doc. #18-19 at 26. This Court need not review the specific instances of ineffective assistance of counsel that Petitioner asserts, because there is no clearly established Supreme Court precedent that establishes a prisoner's constitutional right to the representation of counsel at a parole suitability hearing.

In Morrissey v. Brewer, 408 U.S. 471 (1972), the United States Supreme Court delineated the minimum standards of due process that must be provided parolees during parole revocation hearings. The Court explicitly did not consider whether parolees have a right to counsel or to appointed counsel at those hearings, however. See id. at 489. In Gagnon v. Scarpelli, 411 U.S. 778 (1973), the Court discussed at length whether the state is under a constitutional duty to provide appointed counsel in all probation or parole revocation hearings. The Court emphasized the essentially non-adversary nature of these hearings, the non-judicial character of the administrative decision-making body and the likelihood that these proceedings would be significantly altered by the introduction of counsel. See id. at 788-89. Rather than adopt a per se rule, the Court adopted a case-by-case approach:

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel

16

> must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness – the touchstone of due process – will require that the State provide at its expense counsel for indigent probationers or parolees.

Id. at 790.

In Dorado v. Kerr, 454 F.2d 892, 896 (9th Cir. 1972), cert. denied, 409 U.S. 934 (1972), which was decided before Morrissey and Gagnon, the Ninth Circuit held that due process does not entitle California state prisoners to counsel at California Adult Authority (now CDCR) hearings to determine the length of imprisonment and to grant or deny parole. Subsequently, a three-judge district court panel found that the Dorado decision was consistent with the flexible nature of due process outlined in Morrissey, Gagnon and Wolff v. McDonnell, 418 U.S. 539 (1974) (no constitutional right to counsel at prison disciplinary proceedings). See Burgener v. California Adult Authority, 407 F. Supp. 555, 559 (N.D. Cal. 1976).

"A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). Because there is no clearly established Supreme Court precedent that entitles a prisoner to the effective assistance of counsel at a parole suitability hearing, the state courts'

17

rejection of Petitioner's claim cannot have been contrary to or an unreasonable application of clearly established federal law. See Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004). Petitioner therefore is not entitled to relief on this claim.

V

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is DENIED.

Further, a Certificate of Appealability is DENIED. See Rule 11(a) of the Rules Governing Section 2254 Cases (eff. Dec. 1, 2009). Petitioner is advised that he may not appeal the denial of a Certificate of Appealability in this Court; rather, he may seek a certificate from the court of appeals under Rule 22 of the Federal Rules of Appellate Procedure. Id.

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED   12/17/09

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.07\Troxell-07-1583-bph deny.wpd